UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANDY BLANKENSHIP,

    Plaintiff,                                          Civil Action No. 17-CV-13092

vs.                                                    HON. BERNARD A. FRIEDMAN

MONTEREY FINANCIAL
SERVICES, INC. d/b/a
MONTEREY COLLECTION
SERVICES, et al.,

    Defendants.
_____/

**<u>OPINION AND ORDER DENYING</u>**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

        This matter is presently before the Court on the motion of defendant Monterey Financial Services, Inc. for summary judgment [docket entry 22]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

        Plaintiff has brought this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. She alleges that defendant incorrectly reported to credit reporting agencies the amount she owed under a defaulted lease agreement, in violation of § 1681s-2(a); and that defendant failed to conduct a reasonable investigation when she complained of the error, in violation of § 1681s-2(b). Defendant seeks summary judgment on the grounds that it correctly reported the delinquency, that it conducted a reasonable investigation, and that plaintiff cannot prove she suffered any actual damages.

Plaintiff appears to concede that she is indebted to defendant. The debt arises from plaintiff's default on a lease, a copy of which is attached to defendant's motion as Ex. 1A. The lessor is Wags Lending, LLC. The lessee is plaintiff. The property is a Boston Terrier, the "agreed upon value" of which is $2,495. On September 20, 2016, plaintiff took delivery of the dog and paid $1,819.24, which consisted of $1,644.70 in "capitalized cost reduction," $149.54 for the first monthly payment, and $25 in "warranty cost." Plaintiff agreed to make eleven monthly lease payments in the amount of $149.54 by the 20th day of each month following the lease date. If plaintiff decided to purchase the dog at the end of the lease, she could do so for an additional payment of $127.70. If she decided not to purchase the dog, she agreed to pay a $63.85 "disposition fee." The lease was assigned to defendant on September 23, 2016. *See* Owens Decl. ¶ 7.

Plaintiff concedes that she made no payments after taking possession of the dog. Plaintiff alleges that on April 25, 2017, she "obtained her credit files and noticed Monterey Collection Services reporting the Errant Trade Line with an incorrect balance of $2,413.00." Compl. ¶ 7. Plaintiff has not submitted a copy of those credit reports, but she has submitted pages from her Equifax and TransUnion credit reports dated August 10, 2017. The Equifax credit report indicated that plaintiff's account with defendant had been charged off and that the "reported balance" was $1,645. Pl.'s Ex. 5. On the same date, plaintiff's TransUnion credit report showed two accounts with defendant, one with a charge off amount of $1,645 and another that had been "placed for collection" with a balance of $2,413. Pl.'s Ex. 6.

2

It is not clear from plaintiff's complaint or from her response to the instant motion what amount plaintiff believes defendant could correctly have reported, but it is clear she believes the $2,413 amount defendant reported in April and August 2017 was incorrect. *See* Compl. ¶¶ 5, 7, 11; Pl.'s Br. at 3. Defendant stands by this figure. *See* Def.'s Br. at 5-6, 7, 14, 16; Owens Decl. ¶¶ 10-11, 15; Def.'s Reply at 3-4.

Defendant's motion for summary judgment is denied because it has not shown that the $2,413 delinquency it reported was accurate. Defendant arrived at this amount by adding

> (1) the original $1,644.94 balance from Plaintiff's loan servicing account; (2) the $127.70 "Purchase Option" provided for in the Lease; (3) $620.42 in collection fees; and (4) $20.00 in late fees for missed payments from October 2016 through January 2017.

Owens Decl. ¶ 11. Except for the $20 in late fees, which is allowed under ¶ 4 of the lease, defendant has not identified any lease provisions that justify these components of the $2,413 total.

First, defendant has not shown that there was an "original $1,644.94 balance from Plaintiff's loan servicing account." Defendant's vice-president, John Owens, avers that plaintiff made no lease payments and that her account was transferred from defendant's loan servicing department to its collections department on January 30, 2017. Owens Decl. ¶ 8. At that time, as plaintiff had missed four lease payments, her balance was $598.16 (4 x $149.54), not $1,644.94 (11 x $149.54). Defendant had the option of terminating the lease early due to plaintiff's failure to "make any payments required under this Lease when due,"

3

Lease ¶¶ 8(b) and 9, and in that event plaintiff agreed to pay a sum that included past-due and remaining lease payments,[1] but defendant does not indicate that it had exercised this option by January 30, 2017, or that it ever did so.

The accuracy of the "$1,644.94 balance from Plaintiff's loan servicing account" depends on whether defendant terminated the lease early because if it did not do so, plaintiff's obligation for past-due monthly lease payments was $598.16 as of January 30, 2017; $1046.78 as of April 25, 2017 (when plaintiff alleges she first discovered that defendant reported a delinquency of $2,413); and $1,495.40 as of August 10, 2017 (when plaintiff's TransUnion report showed delinquencies of both $1,645 and $2,413). As defendant has not shown when, or whether, it exercised its option to terminate the lease early, on this record it is not possible to determine the accuracy of the $1,644.94 component of the

---

[1] Determining the precise amount plaintiff owed upon early termination of the lease is no easy task, but the amount does appear to include all past-due and remaining monthly payments. Paragraph 8(b) of the lease states in relevant part:

> **Early Termination Obligations:** Upon early termination . . . , you agree to pay the lesser of:
>
> (1) The sum of (i) all remaining Lease Payments, plus (ii) any past due Lease payments outstanding and unpaid under the Lease at early termination, plus (iii) any unpaid taxes or official fees assessed or billed in connection with this Lease, the Pet and the early termination, and any other amounts necessary to satisfy all of your obligations under this Lease, plus (iv) the Disposition Fee in Section 2 of this Lease, or
>
> (2) The sum of (i) any past due Lease payments unpaid under the Lease at early termination, plus (ii) any unpaid taxes or official fees assessed or billed in connection with this Lease, the Pet and the early termination, and any other amounts necessary to satisfy all of your obligations under this Lease, plus (iii) the Disposition Fee in Section 2 of this Lease, plus (iv) the amount by which the Adjusted Lease Balance (described below) exceeds the Realized Value (described below) of the Pet.

4

$2,413 delinquency defendant reported to the credit reporting agencies in April and August 2017.

Defendant next asserts that it included in the $2,413 amount "the $127.70 Purchase Option provided for in the Lease." Defendant has not shown that the lease permitted inclusion of this item. Paragraph 2 of the lease gave plaintiff "an option to purchase the Pet at the end of the Lease term for $127.70." Defendant has shown that plaintiff exercised this option or that any other lease provision permitted defendant to include this item in the amount it reported as being delinquent.

Defendant also asserts that it included in the $2,413 amount "$620.42 in collection fees." Defendant has not shown that the lease permitted inclusion of this item. In its reply brief, defendant argues that this amount is authorized by ¶ 9 of the lease, which in the event of default permits defendant to "[a]dd amounts we spend protecting our interest to your Lease obligation and charge rent on the added amount, or ask you to pay these amounts right away." Defendant does not explain how it incurred $620.42 "protecting our interest," an amount Owens avers was added immediately upon plaintiff's account being transferred from the loan-servicing department to the collection department. Owens Decl. ¶ 10-11.

In short, defendant has not shown that the $2,413 delinquency it reported to the credit reporting agencies was accurate. Nor has defendant shown that it conducted a reasonable investigation when plaintiff complained about the inaccuracy. Defendant claims that as part of its investigation it "reviewed the Lease." Def.'s Br. at 7, 16. For the reasons

5

stated above, had defendant conducted a reasonable, "fairly searching inquiry," *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012), it would have learned that its computation of this amount was not warranted under the lease.

Finally, defendant argues that it is entitled to summary judgment because plaintiff cannot prove damages. The Court rejects this argument because a jury might reasonably conclude that defendant's violation of plaintiff's rights under the FCRA was willful. Defendant concedes that in this event plaintiff is entitled to statutory damages. *See* § 1681n(a)(1)(A). For willful violations, punitive damages are also available. *See* § 1681n(a)(2). If plaintiff proves willfulness, she need not prove she sustained actual damages. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for leave to file a late reply brief is granted.

Dated: April 20, 2018         s/Bernard A. Friedman
Detroit, Michigan             BERNARD A. FRIEDMAN
                              SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 20, 2018.

                                            s/Johnetta M. Curry-Williams
                                            Case Manager